STATE, RESPONDENT, v. HARRIS, APPELLANT.

(No. 5,211.)

(Submitted January 5, 1923. Decided January 31, 1923.)

[213 Pac. 215.]

*Criminal Law—Homicide—Evidence—Exhibits—Firearms, etc.
—Improperly Tagged—Prejudice—Waiver.*

Homicide—Exhibits—Firearms, *etc.,* Admissible in Evidence.
   1. In a prosecution for murder, firearms, shells, *etc.,* found at or near the place of arrest are properly admitted in evidence as a part of the history of the arrest and as bearing on the crime, although not clearly shown to have been the property of the accused or used in its commission.

Same—Exhibits—Objectionable Legends on Tags—When Ground for Reversal.
   2. The placing of tags on firearms, cartridges, shells, *etc.,* taken from the possession of defendant in a prosecution for murder or found at the place of arrest, with notations thereon calculated to prejudice his case in the minds of the jury, if done knowingly and maliciously by the prosecuting attorney, will be considered not only prejudicial error requiring a reversal of the judgment of conviction but cause for disbarment as well.

Same—Objectionable Legends on Exhibits—Failure to Object to Introduction—Waiver.
   3. Where exhibits of the nature of the above (par. 2) with tags attached upon which were inscribed objectionable notations, complained of on motion for new trial as having prejudiced the defense in the eyes of the jury, were upon inspection by his counsel introduced without objection or request for an instruction that the jury disregard the notations, it will be presumed that there was no objection to their introduction and the ruling of the trial court denying a new trial will not be disturbed on appeal.

*Appeals from District Court, Silver Bow County; Jeremiah
J. Lynch, Judge.*

MONTE HARRIS was convicted of murder of the first degree, and appeals from the judgment of conviction and an order denying him a new trial. Affirmed.

*Mr. Charles E. O'Neill* and *Mr. Clarence Hanley,* for Appellant, submitted a brief; *Mr. O'Neill* argued the cause orally.

The affidavit of the jurors is only signed by eleven of them, and we respectfully submit that if any one of the twelve

[66 Mont. 34.]

jurors saw the writing upon the cards, and especially the writing on the card which was a part of Exhibit "H," which says, "This gun used to kill Schilling. Carried by Bill Harris, belongs to Monte," this appellant is entitled to a new trial. It is established law in this state, "that in the absence of a satisfactory showing to the contrary it is presumed that the jury did see and consider all of the evidence in the case." This principle is laid down in the case of *State* v. *Patch,* cited in 21 Mont., page 534. A statement by a juror that he considered only part of the evidence before him is an attempt to impeach his own verdict, and we respectfully submit that this cannot be done except in cases where the verdict is arrived at by lot or chance or other unfair means have been employed. Cases on this point are: *State* v. *Lewis,* 52 Mont. 495, 159 Pac. 415, *State* v. *O'Brien,* 35 Mont. 482, 10 Ann. Cas. 1006, 90 Pac. 514, *State* v. *Brooks,* 23 Mont. 146, 57 Pac. 1038, *State* v. *Beesskove,* 34 Mont. 41, 85 Pac. 376, and *State* v. *Wakely,* 43 Mont. 427, 117 Pac. 95. It was held in the case of *Gallagher* v. *State,* 17 Fla. 370, "That a new trial will be granted, in a criminal case, where letters containing hearsay evidence and immaterial to the issue, but prejudicial to defendant, have been admitted in evidence."

In the case at bar a more serious situation arises, because the evidence might be material in character, but it is incompetent and highly prejudicial to defendant. In the case of *Joyce* v. *Commonwealth,* 78 Va. 287, the court goes even further and says: "The admission of incompetent evidence which may have prejudiced the accused requires a new trial, although it is doubtful whether he was in fact prejudiced thereby." In the case of *Peek* v. *State,* 21 Tenn. (2 Humph.) 78, it was held: "Where incompetent evidence is received on the trial, in a criminal case, the court should award a new trial, though it may appear that the verdict is correct, since the court cannot determine whether the verdict was given on the evidence that was properly received or that which was incompetent." In the case of *Frain* v. *State,* 40 Ga. 529, it is held: "The ad-

mission of incompetent testimony requires the granting of a new trial, though the verdict was amply supported by other competent evidence.'' (See, also, *Commonwealth* v. *Green,* 17 Mass. 515; *State* v. *Allen,* 8 N. C. (1 Hawks) 6, 9 Am. Dec. 616.)

The foregoing cases clearly show the effect of such evidence as was contained on the said cards, upon the verdict in any case, and we believe that the principles established are applicable to the case at bar.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, *Mr. Geo. M. Bourquin,* County Attorney, and *Mr. Leslie B. Sulgrove,* Assistant County Attorney, for the State, submitted a brief; *Mr. Foot* argued the cause orally.

Respondent submits that the record in this case shows conclusively that appellant examined and knew of the writing upon the tags attached to guns introduced in evidence, and that he made no objection to the admissibility thereof; neither did he assign the inclusion thereof as misconduct at the time made, and he is now estopped to set it up as error entitling him to a new trial. Misconduct must be assigned as such at the time made. (Hayne on New Trial and Appeal, sec. 27; 16 C. J. 1141, 1162; 2 Thompson on Trials, sec. 2591; *People* v. *Johnson* (Cal. App.), 207 Pac. 281; *People* v. *MacDonald,* 167 Cal. 545, 140 Pac. 256; *State* v. *Biggerstaff,* 17 Mont. 510, 43 Pac. 709; *State* v. *Gay,* 18 Mont. 51, 44 Pac. 411; *Baskett* v. *Commonwealth* (Ky.), 44 S. W. 970; 1 Spelling on New Trial and Appeal, sec. 149; *Id.,* secs. 101, 102; 2 *Id.,* sec. 671; 4 C. J. 700 *et seq.,* 717–721.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is a companion case to that of *State* v. *William Harris, ante,* p. 25. The defendant was by information charged jointly with William Harris and two others, with the crime of murder, alleged to have been committed in Silver Bow

County on the twenty-fifth day of November, 1921. The defendant made demand for a separate trial, and was tried by a jury, which returned a verdict finding him guilty of the crime of murder in the first degree, therein fixing his punishment at death by hanging. Judgment was by the court pronounced in accordance with the verdict, and the defendant has appealed therefrom, and also from an order denying him a new trial.

It appears that Cyril Schilling was, on Thanksgiving Day, November 24, 1921, the proprietor of the "Harrison Hotel," in the city of Butte. On that night, between the hours of midnight and 1 A. M., there was a party of five guests in the hotel on pleasure bent, comprising two men, two women, and a taxicab driver. This party arrived at and entered the hotel just a few minutes before the murder and robbery hereinafter described occurred. As they entered the hotel, four men were observed standing directly outside the entrance, one of whom was later recognized as the defendant's codefendant, William Harris. Three of these men were short and one tall in stature, the taller man being William Harris. Another of defendant's codefendants, Earl McCoy, was positively identified. However, as no question is presented on this appeal as to the identity of the defendant as one of the participants in the murder and robbery, a review of the evidence in this respect is not required, further than to say it was amply sufficient for the jury. The party of merrymakers entered the ballroom adjoining the barroom, to the south, and had three dances therein, music being provided by an electric player piano which operated in the playing of one piece of music after another upon dropping a coin into a slot. The party repaired to the barroom after these dances and were lined up at the bar, the deceased, Cyril Schilling, then being behind the bar. The door-bell at the north entrance was rung, and the deceased went into the hallway leading to such door to answer. A noise was then heard in the hallway and the deceased exclaimed: "For God's sake, don't shoot! Take all—why kill

me?'' The deceased was shot by the defendant, or at any rate by one of his codefendants, it matters not which on the question of his guilt. The bullet was discharged from a 32-automatic pistol and struck the deceased in the left forearm as the arm was raised and took a course through his body downward, coming out between the ninth and tenth ribs on the right side. Death resulted immediately thereafter. After gaining entrance, the bandits rushed into the barroom, McCoy preceding, who, with gun in hand, exclaimed to the guests above alluded to, ''Put them up, put them up, damn you! I'll pick you down one by one.'' These guests were then lined up facing the west wall with their hands raised high above their heads. All were relieved of their valuables, and the cash register was rifled. In the process of relieving one of the guests, Mrs. Gladys Kelly, of her valuables, one of the robbers, William Harris, used a pair of pliers to cut a diamond ring from her finger, and as these guests were thus lined up and robbed, one of these bandits was heard to say: ''If you don't keep your hands up we'll shoot. We shot one fellow and we would just as soon shoot the rest of you.'' They were constantly reminded of the fact that ''one man had been killed and it would be no worse if they killed the rest * * * as they had already committed murder.'' While this scene was being enacted in the barroom, Agnes Schilling, wife of the deceased, having seen the four robbers enter from her position at the head of the stairs overlooking the hallway in which deceased opened the door after the bell was rung, and who saw her husband fall, ran back into her room for a gun, and upon returning, found but one of the robbers standing at the bottom of the stairway, who ordered her back to her room saying: ''If you make another move, I will give you the same.'' After the bandits left, the deceased was found in a dying condition, his body having been turned around from the position in which he had first fallen, his valuables removed from his person, his pockets rifled and

[66 Mont. 34.]

turned inside out. He gasped, endeavored to speak to his wife, and died.

Defendant specifies ten assignments of error, none of which are [1] worthy of serious consideration, in our opinion, other than the seventh, as follows: "The court erred in overruling and denying this defendant a new trial, because of misconduct of the prosecuting attorneys in knowingly and maliciously concealing from the court the fact that the cards attached to the two guns and marked Plaintiff's Exhibits 'H' and 'F' contained writing as heretofore set out, and in knowingly and maliciously, with intent to prejudice the rights of this defendant, passing the said exhibits to the jury for examination." Plaintiff's Exhibits "H" and "F," being two 32-automatic Colt's pistols, were received in evidence over defendant's objections. These exhibits were introduced in evidence in connection with the examination of state's witness D. A. Porter, and the objections made by the defendant and rulings of the court in each instance are here quoted from the transcript: "Plaintiff's Exhibit 'H,' which you hand me, I saw before; saw it when I got it out there the day we searched the house; we got it at 2205, the day we searched the place, the day after Thanksgiving Day. The gun was fully loaded and a cartridge in the barrel. This gun was loaded with steel bullets. Q. Handing you plaintiff's Exhibit 'A–X,' I will ask you if you have ever seen that before? A. Yes, that is the clip we took out of the gun, out of this gun. Mr. Sulgrove: We offer in evidence Plaintiff's Exhibit 'H.' Mr. O'Neill: Defendant objects to the admission of Plaintiff's Exhibit 'H' in evidence on the ground that no proper foundation has been laid and no connection has been shown with this defendant, and on the further ground that it is incompetent, irrelevant and immaterial. The Court: Overruled. Mr. O'Neill: Exception. Instrument marked Plaintiff's Exhibit 'H.' * * * Q. Handing you Plaintiff's Exhibit 'F,' I will ask you whether you have ever seen that before. A. Yes. Q. When and where? A. I got it out at the house, 2205 Wall Street,

the day after Thanksgiving when we searched the place. Q. What did you do after you had visited the house, 2205 Wall Street? Mr. O'Neill: That is objected to as immaterial and has no connection. Mr. Sulgrove: It is more or less preliminary. The Court: Overruled. Mr. O'Neill: Exception. * * * "

On cross-examination, witness Porter testified: "I was shown Plaintiff's Exhibit 'H' and I stated it was the gun I found in that house I just mentioned. I do not know whose property that is. I took it because there was another man I had under arrest trying to get to it and I beat him to it. I am sure this is one of the guns I took from that house that day. It is a Colt 32-automatic. I can also describe it as having a copper or brass sight on it. Those guns are all numbered. I couldn't tell you what the number of this gun, Exhibit 'H,' is without looking in my book. I put it down in my book. I examined Plaintiff's Exhibit 'F' and stated I took it from the same house. It is a 32-automatic Colt's. I am sure it is one of the guns I found in the house. I can identify it by the number by looking at my book, and I can identify it by a mark I have on it. My book is in my pocket. Q. Look in your book if you will and tell me the number of Plaintiff's Exhibit 'H.' A. Now, there is two 32-automatic Colt's there, and same make gun, but different number. I don't know which is the different number. Q. You have got both guns and both of the numbers here? A. I got the number of the two. One of them is 62849 and the other one is 217646. I put those numbers down in another book the night that I took them from the house, and recopied them in this book afterwards. I entered the numbers of those guns on a leaf out of another book, and entered the numbers in my book quite a while afterward, three or four or five days,— after I had taken them on a sheet of paper. From the time I first took them until I entered the numbers three or four or five days later.''

On redirect examination: "Mr. Sulgrove: I would like to ask leave to offer in evidence Plaintiff's Exhibit 'F.' Mr. O'Neill: To which the defendant objects on the ground and for the reason that no proper foundation has been laid, and no connection shown between the defendant in this case, and it is incompetent, irrelevant and immaterial. The Court: Overruled. Mr. O'Neill: Exception. Instrument marked Plaintiff's Exhibit 'F.' "

In our opinion these weapons were properly admissible in evidence, the general rule being that weapons found at or near the place of arrest are properly admitted in evidence as a part of the history of the arrest, and as bearing on the crime, although not clearly shown to have been the property of the accused or used in the commission of the crime. (*State* v. *Byrne*, 60 Mont. 317, 199 Pac. 262; 16 C. J., p. 618, sec. 1225.) But the serious question presented is, that these exhibits [2] had tags of identification attached to them, neither of which were removed, containing legends which defendant contends were calculated to prejudice his case in the minds of the jury. The tag on Exhibit "H" contains the following notations: (In pencil) "Cabin Wall Street (ink) Guns found by Porter and Kelly Nov. 25 (in pencil) 7 shells. (In pencil) Gun that was used to kill Schilling. This gun carried by Bill Harris belongs to Monte, L. D." The tag on Exhibit "F" contains the following notations: (In pencil) "This gun carried by Beach. (Ink) Guns found by Kelly and Porter, Nov. 25th, 6 shells, (pencil) found in cabin."

It will be noted that when these two exhibits were introduced in evidence, no objection whatsoever was made by counsel for the defendant to either the tags attached to such exhibits or to the notations thereon, and the jury were not instructed to disregard same. These tags and the writing on them seem to have been completely overlooked or wholly disregarded by defendant's counsel during the trial. The notations on the tag attached to Exhibit "F" were in no manner prejudicial to the defendant, having no reference to him

or specifically to the crime with which he was charged. As to Exhibit "H," however, the situation is entirely different. Had the court's attention been directed to these tags and the notations thereon, it is quite certain they would have been removed by the court's direction before the admission of these exhibits in evidence. It nowhere appears by whom these notations on the cards were made, nor is explanation offered by affidavit or otherwise as to how or why they came to be there. From the affidavits made in support of defendant's motion for a new trial, nothing appears as to when the notations on the tags were first discovered, and the affidavits filed in opposition to the motion are deficient by reason of failure of explanation as to how, why or by whom the notations on the cards attached to these exhibits were made. Presumably, one of them at least, Exhibit "H," contained notations on the tag attached made by the Sheriff, Larry Dugan, the initials "L. D." appearing at the bottom thereof; and in the absence of affirmative showing to the contrary, we assume they were made merely for the purpose of identification. Were defendant's contention proven, that they were placed on the cards by the prosecuting attorneys for the purpose of knowingly and maliciously prejudicing the defendant's case, such conduct would be considered not only prejudicial error requiring a reversal, but disbarment of the attorneys guilty of such an artifice would surely follow. From the affidavit filed in opposition to the motion for a new trial, sworn to by eleven of the twelve jurymen, the following appears: "that at no time during the time that testimony was being introduced in said cause was affiant informed nor apprised of the contents of any tags or cards attached to two 32-automatic guns introduced in evidence, nor did affiant see, read or know the contents of any matter written upon said cards until the argument of counsel C. E. O'Neill on behalf of the defendant; that for the first time upon the trial of said cause during the argument of said counsel was the undersigned affiant informed of the matter written, if any, upon the tags attached to said ex-

hibits and then only was affiant informed by the statement of said counsel in his argument on behalf of the defendant Monte Harris.'' Thus it appears that counsel for the defendant had full knowledge of the notations on the tags before the case was finally submitted to the jury, and yet they raised no objection, made no protest and refrained from requesting the court to instruct the jury to disregard such notations. Their first objection directed to the court on this account appears to have been made on motion for a new trial. It was then too late, counsel being estopped by their own conduct at the trial.

The tags constitute no part of the exhibits, and although these exhibits were handed to the jury, the notations on the tags were not read nor given particular attention by anyone. It was the duty of defendant's counsel to have made timely objection to the cards and notations thereon, and not having done so, it must be presumed that defendant had no objection to them. That defendant's counsel during the trial must have known of the presence of these tags is apparent to us from the original exhibits with these tags attached now before us, and that which appears in the record. On cross-examination of the plaintiff's witness, John Kelly, by defendant's counsel, M. D. Kelly, the witness testified: ''I identify those two guns which you hold in your hand, now marked Plaintiff's Exhibits 'F,' 'H,' as being the ones I found in that building, by having marked the numbers down in my memorandum. Marked the numbers down the night we brought them to the sheriff's office.'' And the cross-examination of the witness Porter hereinabove set forth in part discloses most minute inspection of the exhibits by counsel for the defendant.

As noted, defendant's sole objection to the introduction of [3] these exhibits was on the ground that no proper foundation had been laid and no connection had been shown with him, and that they were incompetent, irrelevant and immaterial. No objection was made to the tags attached or the notations thereon. Further, the prosecuting attorney makes affidavit

that when Exhibit "H" was offered in evidence, C. E. O'Neill, of counsel for defendant, asked to see the guns, that they were handed to him, and that he examined them, and offered no objection to the tags or notations thereon; that during the cross-examination of the witness Porter, M. D. Kelly, of counsel for defendant, held both exhibits in his hands and made examination of them and of the tags attached, and made no objection thereto; that these exhibits were not passed to the jury until both counsel for the defendant had handled and examined the exhibits and had seen the tags with the notations thereon, and that neither of defendant's counsel offered objection to such tags or the writing thereon, nor did they request the court to admonish the jury to disregard such tags or the writing thereon.

Counsel for the defendant dispute the statement of the prosecuting attorney in some respects; however, the trial court in passing on the motion for a new trial was in best position to know and appreciate that which occurred at the trial. There is no showing that the jurors or any of them read or were in any manner influenced by the objectionable notations on the tags attached to either of the exhibits, and since the burden of establishing prejudicial error in this case rested upon the defendant, and will not be presumed, we must hold the admission of these exhibits with the tags attached was non-prejudicial to the substantial rights of the defendant. There is no reason to disturb the decision of the trial court in passing on the motion.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.

Rehearing denied February 27, 1923.