The STATE OF MONTANA, Plintiff and Respondent, *v.* DARRELL R. WHITE, Defendant and Appellant.

No. 11375.
Submitted March 5, 1968. Decided May 2, 1968.
440 P.2d 269

Charles F. Moses (argued), Sandall, Moses and Cavan, Billings, for appellant.

Forrest H. Anderson, Atty. Gen., Helena, Brian Tierney, Ryegate, James R. Beck, Asst. Atty. Gen. (argued), Helena, for respondent.

THE HONORABLE LeROY L. McKINNON, District Judge, sitting in place of MR. CHIEF JUSTICE JAMES T. HARRISON, delivered the Opinion of the Court.

This is an appeal from a conviction of burglary in the first degree. The defendant and one Everett Hallman, Jr., alias Larry Fordeck, were charged with burglary in the first degree of a Texaco Service Station in Ryegate, Montana, on the 11th day of February, 1967. Hallman later pleaded guilty to the charge and received a suspended sentence.

The case against this defendant came on regularly for trial before the Honorable Nat Allen, sitting with a jury, on the 10th day of July, 1967. The jury returned its verdict on July 12,1967, of guilty as charged, and left the fixing of punishment to the court. Judgment was imposed on the 14th day

of July, 1967, sentencing the defendant to imprisonment in the State Prison at Deer Lodge, Montana, at hard labor, for the term of five years. Motion for a new trial was made and denied, and this appeal followed.

This appeal is based upon the following contentions:

A. The juror W. H. Lehfeldt should have been disqualified under section 94-7119, R.C.M.1947.

B. Defendant's offered instructions numbered 6, 14, 19 and 29, should have been given.

C. Burglary tools should not have been received in evidence.

D. Argument of counsel referring to the defendant as an "ex-con" is prejudicial error.

E. The motion for directed verdict should have been granted for the reason that there was insufficient evidence to justify a conviction of the defendant.

On the morning of February 11, 1967, a burglar alarm on the Texaco Station in Ryegate, Montana, was set off and sounded its alarm in the home of the proprietor of said station, Mr. Whitman Pirrie, at approximately 1:15. He and his wife got up, the wife called the sheriff and Mr. Pirrie dressed and headed for the station. As he approached the station he passed a '57 Mercury with no one in or near it. He saw a person in the office part of the station, and parked where he could see into the station and part of the area behind the station. The sheriff arrived at the station some minutes later and shone his spotlight into the station. He saw someone leaving through a back door and went around back. Both Mr. Pirrie and the sheriff saw two men run from the back of the station to the '57 Mercury, get in and drive away. The sheriff "hollered," but they didn't stop and he fired two shots from a sawed-off 12 gauge shotgun at the departing '57 Mercury. Mr. Pirrie got in the car with the sheriff and they pursued the '57 Mercury. After a chase of ten to twelve miles the '57

Mercury stopped, Hallman and the defendant got out of the car, were arrested and returned to Ryegate.

Turning now to the contentions of the defendant, on voir dire by counsel for the defendant, Mr. William H. Lehfeldt was asked and answered as follows:

"Q. Mr. Lehfeldt, you do have an opinion? A. Yes.

"Q. And to be perfectly fair, and I have no objection to opinions, lawyers have all kinds of opinions, but to be perfectly fair, it would require evidence to overcome that opinion so that it would require more than the ordinary individual to present a case as far as you are concerned? A. Well, it would require evidence, yes.

"Q. You don't start out with a completely open mind, you start out with an opinion that has to be overcome first and you go from there, whatever way it goes? A. If what I read in the newspaper doesn't constitute an opinion, then perhaps I haven't an opinion. If what I read in the newspaper constitutes enough to make a basis for an opinion, then I have an opinion that would have to be overcome."

After some further questioning the juror was challenged for cause under section 94-7119. On voir dire by the court the prospective juror answered positively and unequivocally that he could set aside any opinion he might have and try the case solely on the evidence produced in court.

When asked, "Now, if you and the defendant had changed places and he sat in your place with your frame of mind and you sat down there charged with burglary, would you let him sit as a juror in your case?"

Mr. Lehfeldt answered: "Yes, I think anyone with a good open mind as I feel that I have—if he had the same mind I had going into this position, I would just as soon have him as anyone else."

After further voir dire the challenge was renewed, and after further examination by the court, it was again denied. Before the reception of evidence, and out of the presence of the jury

motion was made to renew the challenge and the motion denied.

Section 94-7119, R.C.M.1947, provides: *"Particular causes of challenge.* Particular causes of challenge are of two kinds—
"*   *   *   *   *   *   *   *   *   *

"2. For the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party, which is known in this code as actual bias."

Section 94-7122, R.C.M.1947, provides:

*"Causes of challenge, how stated.* In a challenge for implied bias, one or more of the causes stated in section 94-7120 must be alleged. In a challenge for actual bias, the cause stated in the second subdivision of section 94-7119 must be alleged; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals, or common notoriety, provided it appear to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matter to be submitted to him   *   *   *."

A juror who on his voir dire stated that he had read in the newspapers an account of the homicide for which plaintiff was on trial; that he had formed an opinion therefrom which it would take evidence to remove, but that in determining the case he would base his verdict upon the evidence and be bound by the court's instructions; that there was nothing known to him which would prevent his trying the case fairly, etc., was held competent in State v. Juhrey, 61 Mont. 413, 202 P. 762.

In State v. Allison, 122 Mont. 120, 129, 199 P.2d 279, 285, the Court states:

"It is a difficult matter at best to ascertain the real state

156

of mind of a prospective juror with respect to detecting the existence of bias or prejudice against one accused of crime. For that reason this court has said (State v. Russell, 73 Mont. 240, 249, 235 P. 712, 715) that the determination of the qualification of a juror to serve in a case before the court 'must be left largely to the sound discretion of the trial court.' Again in State v. Huffman, 89 Mont. 194, 296 P. 789, 790, this court said: '* * * the trial court is the judge of the weight to be given to the testimony adduced on a voir dire examination.' True, there are cases holding that when a witness has once admitted bias his subsequent statements that he can consider the evidence impartially should be viewed with caution. But granting the need for careful scrutiny of the testimony of a witness who has first said 'no' and then said 'yes,' it still remains the province of the trial court to decide where the truth lies and with that determination the appellate court will not interfere unless a clear abuse of discretion is shown. State v. Russell, supra."

The most flagrant of leading questions are commonly employed in voir direing prospective jurors, and this case is no exception. Prospective jurors are led to answer in the words of the attorney. The trial court examined the juror carefully and we find no indication of abuse of discretion in denying the challenges to William H. Lehfeldt.

The defendant contends the following instructions should have been given:

Defendant's offered instruction number 6:

"You are instructed that your personal opinion as to facts not proven cannot properly be considered by you in arriving at your verdict. You may believe, as men and women, that certain facts exist, but as Jurors you can only act upon the evidence introduced upon the trial and from that alone you must arrive at your verdict unaided, unassisted and uninfluenced by any opinion or presumption not formed or based upon the evidence."

Defendant's offered instruction number 14:

"The Court instructs the Jury that your personal opinion as to facts not proved cannot properly be taken into consideration by you as the basis for your verdict. You may believe as an individual that certain facts exist, but as Jurors you can only act upon the evidence introduced upon the trial, and from such evidence alone must you form your verdict, unaided, unassisted and uninfluenced by any opinion or presumption not founded upon the testimony."

Defendant's offered instruction number 19:

"You are instructed that in weighing the evidence given in this case, the Jury is not at liberty to disregard uncontradicted credible evidence upon a material point, but it must be considered by the Jury in reaching a verdict in this case, giving to such evidence such weight as to the Jury seems proper under the circumstances of this case."

Defendant's offered instruction number 29:

"You are instructed that in this case testimony has been received of the activities of one Everett Hallman, Jr. You are instructed that any acts or conduct or any facts surrounding the activities of Everett Hallman, Jr., cannot be imputed to the Defendant, Darrell R. White. His conviction must be based upon the evidence showing beyond a reasonable doubt that he, himself, committed the crime of which he is charged."

Defendant's offered instructions numbers 6 and 14 are repetitious and we assume that the defendant is contending for one or the other rather than both of these instructions.

The Court instructed the jury in instruction 19:

"In your consideration of this case you will only consider the testimony of the witnesses upon the witness stand and such documentary or physical exhibits as have been admitted in evidence. It is your duty to in nowise consider or regard any remarks of counsel in this case which are not supported by the evidence received upon this trial, and no juror shall allow himself to be influenced in any degree by anything which he

158

may have heard, seen or read outside of the evidence and exhibits in this case."

This we believe adequately covers the point. The only opinions mentioned on voir dire were from reading the paper, and general rumor. This instruction would seem to get to the basis of any preconceived opinion or notion that any juror might have.

Defendant's offered instruction number 19 refers to uncontradicted credible evidence, but we are unable to find where it appropriately fits this case. The defendant testified in effect that he was just riding along, and was either in the car, by the car, or in the alley outside of the fence. But on the other side there is testimony that he was neither in or near the car nor in the alley, when the proprietor of the station drove down. The court's instruction number 4, as follows:

"You are the sole judges of the credibility of all the witnesses who have testified in this case, and of the weight to be given their testimony. A witness is presumed to speak the truth; but this presumption may be repelled by the manner in which he testifies, by the nature of his testimony, or by evidence affecting his character for truth, honesty or integrity, or his motives, or by contradictory evidence; and in determining the weight to be given to the testimony of any witness, you have a right to consider the appearance of each witness on the stand, his manner of testifying, his apparent candor or lack of candor, his apparent fairness or lack of fairness, his apparent fairness or lack of fairness, his apparent intelligence or lack of intelligence, his knowledge and means of knowledge on the subject upon which he testifies, together with all the other circumstances appearing in evidence on the trial.

"Under our law the direct evidence of any witness who is entitled to full credit is sufficient proof of any fact except perjury or treason." Together with the court's instruction number 34, as follows:

"Any defendant in a criminal action or proceeding may be allowed to be sworn and testify in his own behalf. In such case, the Jury in judging the credibility of the witness, and the weight to be given to his testimony, may take into consideration the fact that he is the Defendant, and the nature and enormity of the crime of which he is accused; still, you have no right to disregard the testimony of the Defendant on the ground alone that he is the Defendant, and stands charged with the commission of the crime. The law presumes each defendant to be innocent until he is proven guilty, and the law allows him to testify in his own behalf, and the Jury should carefully and impartially consider his testimony, together with all the other evidence in the case." were proper and sufficient under the circumstances of this case.

By the same token we are unable to find any indication of confusion of identity between the defendant and Hallman, and therefore hold the trial court was correct in refusing the defendant's offered instruction number 29.

The defendant's next contention is that the burglary tools should not have been admitted in evidence. Included in this designation are two bars, referred to throughout the case as crow bars. They are about two feet in length, one has a half circle at one end with a claw commonly used for pulling nails; the other is slightly angled off and flattened at the end. Also included is a .22 High Standard Sports King automatic pistol and a loaded clip, and three pairs of leather gloves.

Both the prosecution and the defense rely on State v. Filacchione, 136 Mont. 238, 347 P.2d 1000.

In the Filacchione case the court stated: "The general rule is that burglary tools may be introduced and received into evidence only after proof is made connecting the tools with the accused or the crime. [Citing authority.] It does not appear from the evidence, that the tools in question here were ever in the possession or under the control of the defendant

or that they were in any way connected with the alleged crime."

The case points out that other tools found in a box on the garbage cans were admissible in evidence. There was testimony from a police officer that he saw defendant place the box on the garbage cans.

In the case at bar, there is no question the "burglary tools" were in the possession of and under the control of the defendant and his companion.

The .22 pistol was found on the front seat of the car in which the defendant and Hallman were travelling. The testimony is to the effect the said gun was carried by Hallman. At one point the defendant testified that Hallman was waving a gun.

In State v. Allison, 122 Mont. 120, 199 P.2d 279, the court stated:

"The applicable rule of law is stated by this court as follows in State v. Harris, 66 Mont. 34, 213 P. 215, 217: '* * * the general rule being that weapons found at or near the place of arrest are properly admitted in evidence as a part of the history of the arrest, and as bearing on the crime, although not clearly shown to have been the property of the accused or used in the commission of the crime.' "

Three pairs of leather gloves were admitted. The defendant denied that they were his, but on cross examination admitted that he had asked for and received a receipt for some gloves, allegedly new gloves, from the sheriff. In any event, according to the defendant's testimony he and Hallman had been together immediately prior to the burglary for four or five days, and a good part of that time they had been travelling in the '57 Mercury. In view of that, the admission of the gloves would seem to be immaterial.

In his closing statement, the prosecuting attorney referred to the defendant as "this ex-con". After the close of final argument and out of hearing of the jury, counsel for the de-

fendant moved for a mistrial. In testimony, the defendant admitted a prior conviction. The argument is that the county attorney went one step beyond, that there is no evidence that the defendant was ever incarcerated, and the jury would have to assume there was a legal confinement in a state prison which was not in evidence in this case.

In Volume 15A Words & Phrases, p. 219, we find the following:

*Ex-convict.*

"An ex-convict is a person who has been found guilty by a proper tribunal of a crime against the laws of the state, whether it be a misdemeanor or a felony. Cameron v. Tribune Association, 7 N.Y.S. 739, 742, 55 Hun. 607.

"The prefix 'ex' to the word 'convict' denotes that the convict has served out a sentence for crime, or been pardoned, but it does not take away the libelous effect of charging a man with being an ex-convict. Morrissey v. Providence Telegram Pub. Co., 32 A. 19, 19 R.I. 124."

It is probably true that most people today would think of an "ex-con" as one who has served time in prison. We expressly disapprove of a prosecuting attorney using any derogatory epithets to refer to any defendant during the trial. In the case at bar, the reference was to whose testimony should be given credence. We believe the question could be raised by referring to "this defendant who has previously been convicted of a felony," or some such similar wording.

On the other hand, we are not impressed with the argument of counsel for the defendant and find no reversible error here. We believe the stigma, if any, arises from the conviction, and is not greatly increased or reduced by reason of serving a sentence in prison or avoiding that penalty.

Finally, the defendant contends his motion for directed verdict at the close of the state's case in chief should have been granted.

Sheriff Eugene Clark testified to receiving a call that the

burglar alarm at the station had sounded; of going to the station, shining a light in and seeing a man leaving through a back door; of going around and seeing two fellows running to their car; of hollering, and as they pulled away of firing two shots at the car, and then giving chase, following the car to about eleven miles east of Ryegate where it stopped; of arresting the defendant and Hallman at the car; of finding the .22 on Hallman; of finding the two crow bars on the front seat of the car, and three pairs of gloves also in the front seat of the car; and again of finding a fully loaded .22 in the front seat (we can only assume this is the same .22 testified to being found on Hallman); that the back door of the service station had been pried open, and a carton of merchandise boxed up inside in front of the back door.

Mr. Pirrie testified to being aroused by the burglar alarm, and corroborated the testimony of the sheriff.

We believe a question for the jury was presented and the trial court properly denied the motion for directed verdict.

The record of this case indicates that counsel for the defendant has been diligent and spared no effort in representing his client. The record further indicates a fair trial and a legal conviction.

The judgment affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN HARRISON, concur.