Argued July 6, reversed and remanded September 20, petition
for rehearing denied October 24, 1961

# STATE OF OREGON v. THOMPSON

364 P. 2d 783

*Robert B. Duncan,* Medford, and *Leo Levenson,* Portland, argued the cause for appellant. With them on the briefs were Duncan, Brophy, Wilson & Duhaime, Medford.

*Thomas J. Owens,* Deputy District Attorney, Medford, argued the cause for respondent. With him on the brief was Alan B. Holmes, District Attorney, Medford.

Before PERRY, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

SLOAN, J.

Defendant was convicted of armed robbery. He has appealed from the judgment of life imprisonment that followed. The troublesome assignment concerns the admission into evidence of a revolver found at the defendant's home when he was arrested. The problem revolver was a .22 caliber of the type customarily used for target and light sport shooting.

The robbery in question was committed at a supermarket in Medford on the evening of Labor Day, 1959. The act was accomplished in this way: A well dressed man, who shortly proved to be a robber, approached an assistant manager of the store and inquired about an item usually displayed for sale, none of which was then found on the shelf. The manager went to the stockroom to look for further supply. When he returned to his presumed customer the latter handed the manager a newspaper clipping which related the story of a robbery of a store. The manager evidenced a lack of interest and started to walk away. The man then told the manager that this was a robbery. The robber unbuttoned the front of a plaid jacket, he was described as wearing, and

exhibited a revolver tucked into the front of his slacks. Only the handle and a small part of the metal portion of the gun was visible. The robber told the manager that there was an accomplice in the store, that he would use the gun if necessary and that harm would come to his wife—then home alone—if the manager did not do as directed.

As a result of these threats, and acting as directed, the manager went to the store office, opened the safe, removed all paper money of large denominations, put it in a sack and handed it to the robber. The latter warned the manager not to give an alarm for five minutes or the accomplice would harm him. By this ruse the robber was able to leave unmolested and unpursued.

At about 11:15 p.m. on November 8, 1959, a group of police officers came to defendant's home in Klamath Falls and arrested him for the described robbery. The home of defendant, although more expensive than most, was an ordinary home occupied by himself, wife and two children. We mention the character of the place of arrest to indicate that it was not, in any sense, a typical place of hide-out. Everything about the situation could have been substantially duplicated in many homes within the area. In a conversation with defendant which occurred immediately after the police officers gained entrance into the house, defendant was asked if he owned a gun. He replied that he owned only a shotgun. Later, one of the officers found the instant revolver on a shelf in a closet in defendant's bedroom. It was not concealed. Defendant was then taken to the police station at Klamath Falls where he was later identified by the manager as the robber. Indictment, trial and the verdict of guilty followed.

■ When the gun was offered in evidence the state did not claim that it was the gun used in the robbery. In fact, it was admitted that the revolver offered in evidence could not be identified as the robbery weapon. All that was asserted by the prosecuting attorney to justify the admission of the revolver was that the proffered exhibit was "relevant." In argument here it was claimed that it was admissible to show that defendant lied when he was asked, at the time of his arrest, if he owned a gun. It is also argued that it shows ability to commit the crime.

When the revolver was first offered in evidence the trial judge reserved ruling. Later he asked the police officer, who had identified the gun, if that officer had had the gun in his possession since the arrest. When the officer replied "yes" the court admitted the exhibit. We think it was prejudicial error to have done so. We recognize that some courts have admitted a weapon not identified as the weapon by which a crime has been committed, found on the person of an accused or in his possession at the time of arrest. In each of those cases, however, there has been some evidence linking the weapon to the crime and to the defendant.

To sustain its position the state particularly relies on a federal case, *Banning et al v. United States,* 130 F2d 330 (6th Cir 1942), and two cases decided by the California Court of Appeals, *People v. Mar Gin Suie,* 1909, 11 Cal App 42, 103 P 951, and *People v. Beltowski,* 1945, 71 Cal App2d 18, 162 P2d 59. Two recent California cases, one decided by the Supreme Court of California, *People v. Riser,* 1956, 47 Cal2d 566, 305 P2d 1, and *People v. Nichols,* 1959, 171 Cal App2d 320, 340 P2d 727, partially sustain the state's position. In *People v. Riser,* supra, it was held that

the particular weapon offered in evidence should not have been admitted, but held the error was not prejudicial. We do not believe the factual situations in any of the cases are sufficiently similar to the peculiar facts of this case to give support to the state's position.

In *State v. Banks*, 1934, 147 Or 157, 32 P2d 571, defendant was charged with murder. The murder was committed when Banks was resisting arrest. Prior to his anticipated arrest Banks had publicly announced he would kill anyone who attempted to arrest him. The actual killing was done with a rifle. However, the court held it proper to have admitted into evidence a revolver and shells found shortly after the fatal shooting in Bank's home, the scene of the shooting. It was said that this was evidence of Bank's intention to carry out his threats. The court cited a Montana case, *State v. Harris*, 1927, 66 Mont 34, 213 P 215. Harris was one of two persons accused of murder while committing an armed robbery. When one of the defendants was arrested the next day, he made a lunge for the gun later offered in evidence but an officer beat him to it. In addition the gun admitted was of the same caliber as the bullet taken from the murder victim. The circumstances of the Harris case, and the Banks case, are materially different than the facts of the case in issue.

An earlier case of *State v. Wintzingerode*, 1881, 9 Or 153, was also a murder case. Two rifles were admitted which had been found under a straw pallet in a barn where that defendant had made his bed. It was held that even though both guns could not have been used in committing the murder they had properly been admitted into evidence because of the way they had been secreted and that they had been

found shortly after the murder, and, one of the guns was identified as one that had been stolen from the murder victim a few days before the murder was committed. *State v. Lam Woon,* 1910, 57 Or 482, 107 P 974, 112 P 427 and *State v. Yee Gueng,* 1910, 57 Or 510, 112 P 424 are also distinguishable on the facts.

■ Admittedly, cases involving weapons found on or about a defendant when arrested and which cannot be identified as the actual weapon with which the crime charged had been committed present difficult questions of admissibility. In the absence of any direct or indirect evidence of identity or similarity it may become a problem of the time and place where the accused is apprehended and weapons found in respect to the time and place of the crime committed, or, it may be that evidence of some unique character of the weapon which might have been used to commit the crime in respect to the weapon found upon one accused of the crime would render it admissible. Thus a gun taken from the hand of a person found standing over a murdered victim would be admissible even though no other identification was available. Or in the more usual situation when an accused has been observed secreting a weapon or attempting to throw away a weapon in flight the connection between the weapon and the crime is definite.

At the other extreme is a case like the one now under consideration. The accused was arrested in a normal home atmosphere. The crime was committed two months before at a place about seventy-five miles distant. The gun found and admitted was not unique or distinguishable from other .22 caliber revolvers that could probably have been found in many homes within Klamath Falls, or any other city, at the time of defendant's arrest. There was no testimony that

the gun was similar to the gun that had been seen by the robbery victim. There was nothing to tie this revolver to the crime alleged other than it was found in the home of the man charged with committing the crime.

■ In most instances the admissibility of evidence of this character must be left to the discretion of the trial court. It would be impossible to narrowly delineate the exact limits of admissibility within the varying degrees of connection that could exist. Imagination can devise innumerable hypothetical cases which defy solution by any hard rule. The question must be resolved within the facts of each case. In this particular case, however, we think the prejudicial character of the evidence outweighed its probative value. McCormick, Evidence (1954) 314, ch 16; *State v. Krebs,* 1937, 341 Mo 58, 106 SW2d 428.

■ Another assignment requires attention. The real problem of guilt or innocence in the case concerned the identity of the robber. The store manager and other witnesses identified defendant as the guilty person. After defendant's arrest the manager and other identifying witnesses were taken from Medford to the police station at Klamath Falls at about 2:30 a.m. to look at defendant. After the view the manager was said to have stated to a police officer that he, the manager was now more certain than ever that defendant was the robber. This statement of the manager was not made in the presence of defendant. Nevertheless, the police officer, in rebuttal testimony, was permitted to testify as to the statement made to him by the manager. The testimony was not admissible and was likewise prejudicial. In a new trial it should not be permitted.

It is also proper to mention that some of the police

officers who testified in this trial made volunteer statements that were prejudicial in character and unwarranted. One of the remarks in particular would permit a serious question of mistrial. In another trial this can be avoided.

Another assignment relates to an instruction defining a crime of lesser degree, larceny from the person. The instruction contained inadvertent language that was incorrect. If the instruction is given again it can be corrected.

Reversed, new trial ordered.