(No. 35891

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDDIE JONES, Plaintiff in Error.

*Opinion filed September 22, 1961.*

Joseph N. DuCanto, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and John T. Gallagher, and William L. Carlin, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Hershey delivered the opinion of the court:

Defendant was tried by a jury for murder, was convicted and sentenced to the penitentiary for a term of 199 years. He brings this writ of error to review his conviction, contending that the People failed to prove the *corpus delicti* and also that the court committed prejudicial error in the admission of evidence.

It is unnecessary for an understanding of the rather narrow issues presented on this writ of error to restate all the sordid details disclosed by the record. The People's evi-

dence, which was the only evidence presented, indicates that one Walter Chevers was shot in the bathroom of his apartment in the early morning of December 31, 1955. Present at the time of the shooting besides the deceased and the defendant were James Williams, a companion of the defendant, who was also indicted for murder but was not tried with the defendant, and one Robert E. Price, Jr., a friend of the deceased. Price testified for the People that he saw and heard defendant fire a gun at Chevers, whereupon the witness, Price, fell into the bathtub. When Price emerged from the bathtub, defendant and Williams were gone. Price found Chevers lying in a pool of blood. He felt Chevers' pulse and detected a faint pulse beat. He went to the telephone and dialed the operator, who apparently called the police. Price remained in the apartment until the police arrived.

Arnette Holmes, one of the police officers sent to Chevers's apartment, testified that he took a body, identified as that of Chevers, to Michael Reese hospital, where the body was examined by a doctor. Holmes then took the body to a funeral parlor. While there, Holmes undressed the body and observed a wound in the chest over the heart, which he surmised was a bullet wound. Holmes was permitted, over defendant's objection to testify that, in his opinion, death was caused by the wound.

Eutopia Morsell, a mortician, testified that the body was brought to her mortuary by Holmes and another police officer, that the officers removed the clothes from the body, that she observed a wound over the chest. Over defendant's objection, she was permitted to testify that the wound appeared to be a bullet wound and that, in her opinion, death was caused by a gunshot wound of the chest.

The defendant contends that the People failed to prove the *corpus delicti* beyond a reasonable doubt. He argues, first, that proof of the elements of the *corpus delicti* must be made by the best evidence available, and that proof of

the cause of death should, therefore, have been established by competent medical testimony rather than by the testimony of two lay witnesses. He also contends that the court erred in permitting incompetent opinion testimony of these two witnesses to be used to establish that death was caused by a criminal agency.

The rule as to what constitutes the *corpus delicti* has been stated many times. In a murder case, it consists of two essential elements, the fact of death and the fact that death was caused by the criminal agency of some person. (*People* v. *Manske,* 399 Ill. 176; *People* v. *Bentley,* 357 Ill. 82.) Although defendant made some effort to contend that neither element had been proved, we think that there can be no question that the death of Walter Chevers was conclusively established, and we do not understand defendant to press this part of his argument.

The contention that the State failed to prove the second element of the *corpus delicti,* that the death was caused by the criminal agency of some person, is more difficult to dispose of. The only direct evidence as to the cause of death was given by two lay witnesses, Arnette Holmes and Eutopia Morsell, each of whom was permitted, over defendant's objection, to state an opinion that the death was caused by the bullet wound in the chest. Although the record indicates that the body was examined by a doctor at Michael Reese hospital and there is some intimation that an autopsy was performed, no medical testimony was offered as to the cause of death, nor did the People offer any explanation for their failure to produce such evidence.

Defendant cites the case of *Campbell* v. *People,* 159 Ill. 9, as laying down the proposition that the *corpus delicti* must be proved by the best evidence available and argues that in this case, the best evidence as to the cause of the death of Chevers would be the testimony of the physician who examined his body at the hospital and that, since the People failed to produce this physician as a witness or to

show that he was unavailable, the People have not sustained the burden of proving the *corpus delicti*. We think that the language of the opinion in the *Campbell case* must be understood with reference to the particular facts of that case. The *Campbell case* was a prosecution for the murder of an illegitimate child. The child had apparently been disposed of immediately after its birth and there was no direct evidence either of the fact of death or that the death had been caused by a criminal agency. The question, therefore, was whether the *corpus delicti* could be established entirely by the circumstantial evidence. The defendant conceded that the second element of the *corpus delicti*, the criminal agency as the cause of death, could be established by circumstantial evidence, but argued that the first element, the fact of death, must be established by direct evidence in every case. The court rejected this contention, holding that when there was no direct evidence, the fact of death could be established by circumstantial evidence.

Except for the broad distinction between direct and circumstantial evidence, we do not understand the *Campbell case* as establishing any fixed hierarchy between different types of evidence or as prescribing any particular manner in which the *corpus delicti* must be established in every case. Rather, we understand the rule to be that the *corpus delicti*, like every essential element of a criminal case, must be proved by competent evidence beyond a reasonable doubt. While prudent practice suggests that the People should produce medical testimony as to the cause of death where such testimony is readily available, the failure to do so is not in itself grounds for reversal where the cause of death has been established beyond reasonable doubt by other competent evidence. The question before us is not whether the People might have pursued a better method of establishing the cause of death, but whether the fact that the death was caused by a criminal agency has been proved beyond a reasonable doubt.

A considerable portion of the argument is devoted to the question of whether the policeman, Arnette Holmes, and the mortician, Eutopia Morsell, were shown to have sufficient qualifications to enable them to testify as to their opinion as to the cause of death. We do not, however, regard this question as decisive. Defendant's argument is based upon the assumption that, without the opinion evidence of these two lay witnesses, there was no evidence as to the cause of death. In our opinion, however, even if the court committed technical error in admitting this opinion evidence, such error was not prejudicial, for the unquestionably competent evidence in the record is sufficient to prove beyond a reasonable doubt that Chevers died as a result of the gunshot wound. The other evidence in the record shows that defendant shot Chevers, that Chevers fell, that he was found lying in a pool of blood, that the police arrived and found a body identified as that of Chevers and carried the body to the hospital where it was examined and immediately removed to a mortuary, and that there was a bullet wound in the chest. All of these events took place within the space of two hours or less. While the People's case might well have been presented in a more logical manner, the record leaves no doubt whatsoever that Chevers was dead within an hour and a half or two hours from the time he was shot and there is a strong probability that he was dead within half an hour. While Chevers had been crippled by polio, there is no evidence connecting this with his death, and there is nothing in the record from which any cause of death other than the gunshot wound could be inferred. Under these circumstances we hold that both elements of the *corpus delicti* were established by competent evidence beyond a reasonable doubt. Cf. *Harvey* v. *Commonwealth,* (Ky.), 318 S.W.2d 868, 870; *Morris* v. *State,* (Tex. Crim. App.), 322 S.W.2d 632.

The defendant next contends that the court committed reversible error by admitting into evidence the revolver

found in the automobile in which the defendant was riding when arrested on January 8, 1956, eight days after the commission of the crime and in refusing to strike the testimony of People's witness, William Rodenbaugh, with reference thereto. Prior to the testimony of Rodenbaugh and the admission of the gun into evidence, Robert E. Price, who was present at the time Chevers was shot, had testified that the defendant, Eddie Jones, had at that time in his hand a chrome-plated long-barrelled gun with pellets in it, and that Jones fired the gun at Chevers. Price was then shown the gun, which was marked People's exhibit No. 3 for identification, and testified that it was similar to and looked like the revolver that he had seen in the hands of Jones. This testimony was admitted into the evidence without objection. William Rodenbaugh, a policeman, testified for the People that on January 8, 1956, the defendant with three other persons, one of whom was James Williams, who had been present with the defendant in the apartment when Chevers was shot, was riding in an automobile and ran a stop sign. Rodenbaugh stopped the automobile and, on failure of the driver, Williams, to produce an automobile license or any other identification of the vehicle or any key for the ignition, arrested the occupants. The car was then searched, and a chrome-plated long-barrelled revolver was found under the front seat. Defendant had objected to Rodenbaugh's testimony unless it were connected to defendant, and later moved that the testimony be stricken, which motion was denied. The gun was then offered and admitted into evidence over defendant's objection.

Both parties rely upon cases holding that it is competent to show that a defendant when arrested was in possession of a weapon suitable for the commission of the crime charged. (*People* v. *Gambino*, 12 Ill.2d 29; *People* v. *Lenhardt*, 340 Ill. 538; *People* v. *Powloski*, 311 Ill. 284.) The People contend and the trial court appeared to assume

that the gun was in the possession of either defendant or his accomplice, Williams, and was, therefore, admissible. The defendant, on the other hand, points out that he was riding in the back seat of the car, that the gun was found under the front seat, and that there were four occupants of the car at the time of the arrest, and argues that the gun was improperly admitted since it had not been shown to be in the possession of either the defendant or Williams.

We do not regard the question of the admissibility of the gun as turning entirely upon the question of possession in any technical sense. The basic problem is one of relevance. The gun is relevant if there is evidence to connect it with the defendant and with the crime. In determining whether sufficient connection has been shown, possession is one factor, but not the only factor, to be considered. In *People* v. *Ashley,* 18 Ill.2d 272, we rejected the argument that a weapon is admissible only when it is found in the control or possession of the defendant or in his dwelling at or near the time of his arrest. We held that those are not the only circumstances under which a weapon is admissible and further observed that those conditions may be present, and yet the particular weapon be inadmissible, and concluded that "a weapon may be admitted in evidence where there is proof to connect it with the defendant and the crime." 18 Ill.2d 272, 279-280.

The case of *People* v. *Smith,* 413 Ill. 218, affords an example both of guns that were admissible and guns that were inadmissible in evidence. In that case, the defendant and another person were arrested in an automobile some six months after the crime. Three automatic pistols and one revolver were found under the front seat. In the trunk of the car were two sawed-off shot guns and some ammunition. All of these weapons were admitted in evidence. One of the witnesses to the crime testified that one of the automatic pistols found under the front seat of the

automobile looked like the gun that she had seen in defendant's hand at the time of the fatal shooting, and there was ballistic evidence identifying this gun as the weapon which fired the fatal shot. No attempt was made by the People to connect the sawed-off shot guns found in the trunk of the car with the crime. We held that, under these circumstances, the admission into evidence of the sawed-off shot guns was reversible error. It is true that in our opinion we observed that these shot guns had not been shown to have been in the possession of the defendant, since the car belonged to his father-in-law and he had not been shown to have had access to it on other occasions. However, the real basis for the decision was not the question of possession. Even if the shot guns had been in the defendant's lap instead of in the trunk of the car, they would still not have been relevant, since all the evidence indicated that the crime had been committed with a gun of an entirely different type. Conversely, it may be observed that despite the fact that the defendant was not the sole occupant of the car, no question was raised in our opinion in the *Smith case* as to the admissibility of the guns found under the front seat of the car, one of which was definitely linked to the crime and the others of which were of a type that might have been used.

Thus the question is not whether the gun was in the possession of the defendant, but rather whether the gun had been sufficiently connected with the crime and the defendant to make it relevant as evidence. Here an eye-witness to the crime testified that he saw defendant fire a gun at Chevers and described the gun as a long-barrelled chrome-plated gun. People's exhibit No. 3 was such a gun. The witness was shown People's exhibit No. 3 and testified that it looked like the gun he had seen in defendant's hands. The gun in question was found under the front seat of the automobile in which defendant was riding at the time he was arrested. Under these circumstances, we think the gun was sufficiently

connected with the defendant and with the crime to make it relevant as evidence, and the trial judge did not err in allowing it to be admitted into evidence. *People* v. *Mikka, 7* Ill.2d 454.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*