PEOPLE v HOWARD

OPINION OF THE COURT

1. CRIMINAL LAW—INSTRUCTIONS—FAILURE TO OBJECT—ALIBI.

There was no error in instructions regarding an alibi defense where there was no objection to the instructions at trial, the trial judge made frequent references to the prosecutor's duty to prove all elements of the offense and defendant's involvement beyond a reasonable doubt, the judge made frequent reminders that the defendant was not obligated to prove anything, and the jury understood that defendant's alibi defense need only have raised a reasonable doubt to justify acquittal.

2. EVIDENCE—RELEVANCY—APPEAL AND ERROR—STATUTES—COURT RULES.

A trial judge must draw upon his own wisdom and experience in making a decision on the relevancy of evidence; it is not within the role of the appellate courts to second-guess such judgment and they should intervene only when clear abuse is shown; Michigan statutes and court rules reflect this conclusion (MCLA 769.26; GCR 1963, 529.1).

3. ROBBERY—EVIDENCE—RELEVANCY—SHOTGUN—PROBATIVE VALUE.

The fact that defendant had access to a sawed-off shotgun which at a minimum was similar to the one used in the commission of a robbery is adequate at least to establish relevancy where that gun was observed by a police officer, 15 days after the robbery, in an automobile in which defendant was a passenger and the gun was admitted in evidence at defendant's trial for armed robbery; there was real probative value in the evidence that the defendant was identified as the robber with a shotgun and

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 658.
　Burden and degree of proof as to alibi, 124 ALR 477.
[2, 3, 9] 29 Am Jur 2d, Evidence §§ 249, 251–257.
[4] 30 Am Jur 2d, Evidence §§ 1080, 1084.
[5, 6] 29 Am Jur 2d, Evidence §§ 123, 124, 126.
[7] 29 Am Jur 2d, Evidence §§ 367, 368.
[8, 10] 29 Am Jur 2d, Evidence § 2.

did have access to a sawed-off shotgun which was similar to and could have been the one used by defendant at the time of the robbery.

4. EVIDENCE—PREJUDICE—GUN—FAILURE TO OBJECT—MOTION TO SUPPRESS—RELEVANCY.

Whatever prejudice may have flowed from a gun was a *fait accompli* where no objection was made during the showing of the gun to various witnesses and the questioning regarding identification of the gun and only after completion of the testimony and a motion to admit into evidence was there a motion to suppress; it was relevant and was submitted for jury consideration and assessment of weight.

5. ROBBERY—EVIDENCE—DISTRICT AND PROSECUTING ATTORNEYS—COURTS—DISCRETION—SHOTGUN.

A prosecutor must present all of the evidence known to him; the burden then falls upon the trial judge to control the introduction of evidence, to assess the total of trial facets and use discretion and a trial judge did not abuse that discretion in submitting a sawed-off shotgun for the consideration of the jury where that gun had been observed by a police officer, 15 days after the armed robbery with which defendant was charged, in an automobile in which defendant was a passenger.

CONCURRING OPINION

T. G. KAVANAGH and LEVIN, JJ.

6. ROBBERY—ARMED ROBBERY—SHOTGUN—EVIDENCE.

*A shotgun should not have been admitted in evidence where it was not identified as the very gun used when the crime was committed, nor was it part of a chain of circumstantial evidence sufficient in the aggregate to support a verdict or finding of guilty; nevertheless, defendant's conviction of armed robbery should be affirmed because the attention of the trial judge was not directed to the fact that the gun was not part of such a chain of circumstantial evidence and because the admission of the gun was of relatively little importance and if a new trial were held with the gun excluded it is unlikely defendant would be acquitted.*

7. ROBBERY—ARMED ROBBERY—WITNESSES—IDENTIFICATION.

*Defendant was identified by five eyewitnesses as the robber who was carrying a shotgun and on the basis of their identification testimony the jury could properly convict him of armed robbery.*

8. Criminal Law—Evidence—Weapons—Proofs.

Merely because evidence that a defendant may have had access to a gun is damaging to the defendant does not warrant its exclusion and a gun is not rendered inadmissible merely because there is other evidence of the defendant's guilt; the people are entitled to prove their case by more than one route.

9. Criminal Law—Evidence—Relevancy.

The people should not be permitted to exploit a tenuous relevance to put before the jury evidence which does not truly tend to prove a defendant's guilt, evidence which may very well divert the jury from an objective appraisal of the probative evidence.

10. Criminal Law—Weapons—Evidence.

Guns found some time after the commission of a crime which might have been used to commit it are admissible where: (1) there is testimony or other evidence tending to identify the gun as the very gun used to commit the crime or (2) although the gun is not so identified, it is part of a chain of circumstantial evidence which in the aggregate is sufficient to support a verdict or finding of guilty.

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and Bashara and O'Hara, JJ., affirming Recorder's Court of Detroit, Henry L. Heading, J. Submitted December 6, 1973. (No. 10 December Term 1973, Docket No. 54,755.) Decided May 21, 1974.

Edward Howard was convicted of armed robbery. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Michael R. Mueller,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Officer* (by *Judith K. Munger),* for defendant on appeal.

M. S. Coleman, J. Defendant is appealing a jury verdict finding him guilty of armed robbery. This was affirmed by the Court of Appeals in an unpublished opinion. *People v Howard,* No. 13083 (1973).

The incident occurred on December 3, 1970 at the O'Mack Bar in Detroit. Two men committed the robbery. One was armed with a pistol, the other with a sawed-off shotgun. The patrons were made to lie on the floor and surrender their valuables.

On December 18th, an automobile was stopped because it was being driven without lights after dark and was on the wrong side of the street. Defendant was a passenger in the rear seat. The driver had a sawed-off shotgun standing between his legs, the butt of the gun resting on the floor. Defendant subsequently was arrested for the armed robbery of the O'Mack Bar.

The first witness at trial, a barmaid, identified defendant as being the robber holding the shotgun. She had previously identified him in a lineup. When shown the shotgun, at first she identified it as the one used in the robbery and on further examination, she said it looked like the one used in the robbery.

The next witness, a customer, also made an in-court identification of defendant as being the man with the shotgun. He said that he thought the shotgun taken from the car was approximately four inches longer than the robbery weapon. A second barmaid identified defendant. She testified that the shotgun was similar to the one used in the robbery. Another employee gave similar testi-

mony. She also recalled identifying defendant when shown some photographs after the robbery.

The fifth witness was a customer. He identified defendant as the robber with the shotgun. When shown the weapon he said it was similar to the one used in the robbery. Another customer could not positively identify defendant but he did say the shotgun was similar to the robbery weapon.

The next witness identified himself as the robber who was holding the pistol. He identified defendant as being his partner in this particular crime. He said defendant used a sawed-off shotgun. When shown the weapon produced in court, he said it was similar to the robbery weapon.

. Following this testimony the jury was excused and a separate record was made to determine if the shotgun should be admitted into evidence. One of the arresting officers testified regarding the aforementioned circumstances of the arrest, also including the fact that the two in the back seat of the car ducked down when the police approached. The prosecutor and defendant's attorney presented arguments and briefs. After deliberating overnight, the court ruled in favor of admissibility.

When the jury was returned, the arresting officer testified. The prosecution moved to introduce the weapon. Defendant's counsel objected. After admitting the evidence, the court, without request, cautioned the jury as follows:

"There has been no testimony that this is the sawed off shotgun. Now, you will remember that. So I am admitting that gun into evidence for your consideration; it is up to you to determine under the facts and circumstances of the arrest, and who was arrested at the time, and what was found; you will assess the weight that you will give to that Exhibit in this case."

Defendant presented one witness. His mother-in-law said he spent the night of the robbery in her house.

In the Court of Appeals defendant alleged two instances of reversible error. He said the trial court did not give correct instructions regarding the alibi defense. There was no objection to the instructions at trial. The Court of Appeals noted the judge's frequent references to the prosecutor's duty to prove all elements of the offense and the defendant's involvement beyond a reasonable doubt. The Court of Appeals noted the judge's frequent reminders that the defendant was not obligated to prove anything. The Court of Appeals was "satisfied the jury understood that this defendant's alibi defense need only to have raised a reasonable doubt to justify acquittal". We are convinced there was no error in the instructions.

Also challenged was the court's admitting the shotgun into evidence. The Court of Appeals said that the shotgun

"was sufficiently connected with the offense for which defendant was on trial to warrant its introduction into evidence. The fact that the sawed off shotgun was not specifically identified as the weapon used in the robbery but was only identified as being similar to the one used in the robbery goes to the weight of the evidence and not its admissibility."

Leave to appeal was granted 389 Mich 807 (1973).

Defendant has made two attacks concerning admission of the shotgun. He claims the evidence was irrelevant because it was not found in defendant's possession nor was it specifically identified as the robbery weapon. Even assuming that the gun was admissible, defendant claims its prejudicial

effect was so great that it was an abuse of discretion to admit it.

How are we to evaluate the relevancy of the proffered evidence? Defendant has cited this passage by Justice COOLEY in *Stewart v People,* 23 Mich 63; 9 Am Rep 78 (1871) concerning the use of impeachment evidence:

"The proper test for the admissibility of evidence ought to be, we think, whether it has a tendency to affect belief in the mind of a reasonably cautious person, who should receive it and weigh it with judicial fairness." (p 75.)

Justice COOLEY further said the judge "ought to be allowed a reasonable discretion in such cases" which "ought not to be set aside except in a clear case of abuse". (p 76.)

This preeminent jurist understood the difficulty of trying to devise a mechanical test for determining relevancy. The trial judge must draw upon his own wisdom and experience in making a decision. It is not within the role of the appellate courts to second-guess such judgment. They should intervene only when clear abuse is shown.

Our statutes and court rules reflect this conclusion. MCLA 769.26; MSA 28.1096 says in part:

"No * * * verdict shall be * * * reversed or a new trial granted by any court of this state in any criminal case on the ground of * * * improper admission or rejection of evidence * * * unless in the opinion of the court, after examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

Also see GCR 1963, 529.1.

In the instant matter, the trial judge heard the testimony, saw the witnesses, listened to argu-

ments and read the briefs. He decided that the shotgun should be admitted. He told the jury, in effect, to "receive it and weigh it with judicial fairness". Compare *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971).

Defendant argues that the shotgun was not relevant and, if relevant, that the probative value of the otherwise admissible evidence was outweighed by its prejudicial effect. It also has been argued that its probative value in this instance amounts to little or none at all in light of the several positive identifications and other strong testimony which almost certainly would have led to defendant's conviction without admission of the gun into evidence.

The fact that defendant had access to a sawed-off shotgun which at a minimum was similar to the one used in the commission of the crime is adequate at least to establish relevancy.

The argument that proof of access to the shotgun tagged defendant as a "bad boy" and therefore was prejudicial to a fair trial is also of flimsy fabric. Although it is conceded that the probative value was not conclusive, there was real probative value in the evidence that the defendant was identified as the robber with a shotgun and he did have access to a sawed-off shotgun which was similar to and could have been the one used by defendant at the time of the robbery. As the judge properly instructed immediately upon admission of the gun, the jury was to give the evidence whatever weight it deemed appropriate.

It further is noted that no objection was made during the showing of the gun to the various witnesses and the questioning regarding identification of the gun. Only after the completion of the testimony and a motion to admit into evidence was

there a motion to suppress. By this time, whatever
prejudice may have flowed from the gun was a *fait
accompli.* The technical hurdle of admission was
accompanied by the judge's statement that there
had been no testimony that this "is" the sawed-off
shotgun. It was relevant and was submitted for
jury consideration and assessment of weight.

Prejudice is not borne out by facts. Indeed, one
of defendant's arguments is that there were so
many positive identifications, including that of the
other man admittedly with defendant in the perpe-
tration of the armed robbery, that the evidence of
the shotgun was not needed at all for conviction.
In other words, defendant contends that the prose-
cutor was guilty of "overkill".

Argument is made that such evidence might
have had sufficient probative value had it been
part of a chain of circumstantial evidence, but was
not necessary here.

On the face of it, this theory is subject to some
limitations and use of discretion if it is not to
become "form without substance". For instance, if
such evidence is to be used in a weak case against
the defendant but not in a strong case, we could
distort the reflection of justice.

Practically speaking, the prosecutor normally
does not have the gift of "second sight". He cannot
gauge before trial exactly what identification testi-
mony will be forthcoming (as of the subject shot-
gun and of the defendant himself). He cannot
predict with exactitude what will bring the jury to
the conclusion of guilt beyond a reasonable doubt
or tip the scales to acquittal. He must bring all
possible evidence which, if admitted, must be
weighed against all other evidence. It would be
unreasonable under the facts of the instant case to
require the prosecutor (1) to know in advance the

nature of the identification testimony and (2) then to assess its probative value in the last analysis as against its prejudicial value and (3) to make judgment as to whether the case is strong enough to stand without the exhibit. We must concede that the prosecutor must present all of the evidence known to him.

The burden then falls upon the judge to control the introduction of evidence, to assess the total of trial facets and use discretion. As stated, in the content, context and posture of this case, the judge did not abuse that discretion in submitting the gun for the consideration of the jury. Indeed, an argument might have been made that the instruction to the jury was overly favorable to the defendant in light of the testimony of one witness at least that the gun was the one used in the robbery and of the others that it looked like the one used. Certainly, no one would expect them to have closely inspected the gun under the circumstances. We conclude that both the prosecutor and the judge performed their functions in a manner which requires affirmance by this Court.

This is an appropriate occasion to speak also of the role of the truth in judicial proceedings. The constitutional guarantees to persons coming into our system of justice were designed to develop the true facts of any given situation. Procedures have developed over the years towards orderly means of insuring the truth. Occasionally, the target of these procedures and rules is obscured by webs of split hairs and the constitution is subrogated to a play of words or "gamesmanship". On the other hand, there are occasions when there is something in a trial "so offensive to the maintenance of a sound judicial process that it never can be regarded harmless". *People v Mobley,* 390 Mich 57; 210 NW2d 327 (1973).

In this case, the truth is apparent.

Defendant was properly and fairly tried. The Court of Appeals is affirmed.

SWAINSON, J., concurred with M. S. COLEMAN, J.

T. M. KAVANAGH, C. J., and WILLIAMS, J., concurred in the result of the opinion by M. S. COLEMAN, J.

LEVIN, J., *(concurring)*. The shotgun was not identified as the very gun used when the crime was committed, nor was it part of a chain of circumstantial evidence sufficient in the aggregate to support a verdict or finding of guilty. It should not have been admitted in evidence.

We, nevertheless, concur in the affirmance of Howard's conviction of armed robbery because the attention of the trial judge was not directed to the fact that the gun was not part of such a chain of circumstantial evidence and because we are satisfied that the admission of the gun was of relatively little importance and if a new trial were held with the gun excluded it is unlikely Howard would be acquitted.[1]

I

The people assert that the shotgun, found 15 days after the robbery when the police stopped an automobile in which Howard was a passenger, might have been used by Howard in the robbery.

---

[1] While we are not prepared to say that the judge's ruling was reversible error, we favor a rule requiring a prosecutor, *before* a weapon which might have been used to commit the crime is displayed to the jury, to state his theory of admissibility and to outline the proofs which he expects to offer in support of that theory so that weapons are not displayed unless the prosecutor expects to be able to establish admissibility on one of the two bases mentioned in this opinion *(see* text accompanying fns 5 and 6).

The gun was found between the legs of the driver of the automobile.

None of the eyewitnesses could identify the gun as *the* gun used by the robber who was armed with a shotgun. The most any of the witnesses could say was that it was "similar" to the robber's gun.[2]

Howard was identified by five eyewitnesses as the robber who was carrying a shotgun. On the basis of their identification testimony the jury could properly convict him of the crime. Without the identification testimony Howard could not have been convicted; manifestly he could not have been convicted because 15 days after the robbery he was a passenger in an automobile where there was found a shotgun similar in appearance to the shotgun used in committing the crime.

## II

The admissibility of weapons which *might* have been used to commit a crime is an important issue to both the people and accused persons.

We agree that merely because evidence that a defendant may have had access to a gun is damag-

---

[2] Four eyewitnesses testified that the shotgun offered in evidence was "similar" to the weapon used by one of the robbers.

One witness "thought" the shotgun taken from the car was approximately four inches longer than the gun used during the robbery.

A self-proclaimed confederate testified that the gun was similar, but "I'm not positive if that's the exact one we used on that night".

Evelyn Vaughn, the barmaid, did say on direct examination, "It's the one he was carrying". But she was then asked by the prosecutor, two questions later, whether there was anything "unusual" about the gun which she recognized. She responded, "It's a difference, but I don't know—I don't know that much about guns but—." The question was repeated in a somewhat different form and she responded, "I really couldn't say positively". She was then asked by the prosecutor: "All right. Was the weapon that you saw on that particular evening very similar to this one in total length?" Answer: "Yes". The trial judge's view of her testimony, as set forth in his cautionary instruction, was "There had been *no* testimony that this *is* the sawed-off shotgun". (Emphasis supplied.)

ing ("prejudicial") to the defendant does not warrant its exclusion. We also agree that a gun is not rendered inadmissible merely because there is other evidence of the defendant's guilt. The people are entitled to prove their case by more than one route.

The people should not, however, be permitted to exploit a tenuous relevance to put before the jury evidence which does not truly tend to prove a defendant's guilt, evidence which may very well divert the jury from an objective appraisal of the probative evidence.

There are many general statements that where a weapon or tool was used to commit a crime, a weapon or tool which might have been used in its commission, found in the defendant's possession, may be introduced without proof that it was the very weapon or tool used.[3] These generalizations overstate the true rule. In the only Michigan Supreme Court cases of which we are aware where weapons or tools found in the defendant's possession were held admissible to show capacity to commit a crime, they were part of a chain of circumstantial evidence against the defendant.[4]

---

[3] 1 Wharton, Criminal Evidence (13th ed), § 157, pp 289–290; § 211, pp 440–442; 3 Underhill, Criminal Evidence (5th ed, Herrick), § 633, p 1507; 1970 Cum Supp p 30; § 634, p 1508, *et seq. But see* 1 Gillespie, Michigan Criminal Law & Procedure, § 461, p 572; *State v Kehr,* 133 Iowa 35; 110 NW 149 (1907); *State v Crawford,* 60 Utah 6; 206 P 717 (1922). *See* discussion in 22A CJS, Criminal Law, § 712, pp 956–969.

[4] In *People v Courtney,* 178 Mich 137, 153; 144 NW 568 (1913), *People v Lahnala,* 193 Mich 144; 159 NW 352 (1916), and *People v Winney,* 196 Mich 347, 365; 163 NW 119 (1917), the accused person had been in possession of the weapon or tools before as well as after the commission of the crime with which he was charged.

Lahnala owned the gun before the crime was committed. Winney admitted stealing the gun the night before the victim was murdered. In both cases the guns were of the same caliber as bullets found at the scene. In *Courtney,* a satchel resembling one seen in the defendant's possession before the crime was seized by the police simultaneously with the seizure of burglary tools.

In *People v Kelly,* 386 Mich 330, 338; 192 NW2d 494 (1971), the gun

Guns found some time after the commission of a crime which might have been used to commit it are admissible where:

1. There is testimony or other evidence tending to identify the gun as the very gun used to commit the crime. The testimony of the eyewitnesses in this case was not of that quality.[5]

2. Although the gun is not so identified, it is part of a chain of circumstantial evidence which in the aggregate is sufficient to support a verdict or finding of guilty.[6]

Here the relevance of the evidence of Howard's access to a shotgun was a theoretical relevance unrelated to any other proof, bearing no logical or rational connection to any other evidence. It was not part of a composite of circumstantial proofs from which Howard's guilt could have been deduced.[7]

---

was seized by the police as they arrested the defendant. In addition to the identification testimony of the victim, there was a chain of circumstantial evidence: testimony of the victim of a like crime committed by a similar *modus operandi,* identification of the gun by the victim of this other crime as "the same one" used when that crime was committed, and motel room keys found in defendant's possession for various rooms including the motels where both the charged offense and this other crime were committed.

[5] There are a large number of guns in circulation and many look alike. A person at the blunt end of a gun is not likely to be able to say whether a gun offered in evidence is the gun that was *actually* used. There are, however, exceptions as indicated by the prosecutor's question of the barmaid asking whether there was anything unusual about the gun which enabled her to identify it (see fn 2).

In the following cases the weapon used in the commission of the crime was unusual: *People v Jones,* 22 Ill 2d 592; 177 NE2d 112 (1961) (crome-plated, long-barreled revolver); *People v Pinelli,* 24 App Div 2d 1023; 265 NYS2d 918 (1965) (gun described as large steel gray, like a Luger).

[6] The fact that the gun was not in Howard's physical possession when it was found would be a factor to be considered in determining whether the aggregate of the circumstantial evidence was sufficient to convict.

[7] *Cf. State v Thompson,* 228 Or 496, 501–502; 364 P2d 783, 785–786 (1961), where the Court held that the "prejudicial character of the evidence [a handgun] outweighed its probative value". The defendant

The people did not seriously seek to prove their case by more than one route. The evidence of Howard's access to a shotgun was left suspended before the jury unrelated to any other evidence. If this evidence served any purpose, it could only have been possibly to divert the jurors from the central issue of whether to believe the identification testimony of the eyewitnesses or the testimony of the alibi witness, thus encouraging the jurors to resolve any doubts regarding the conflicting testimony on the evidence that Howard was riding with other men at night with a sawed-off shotgun and the legally irrelevant inference that he must be a bad man.

If the attention of the trial judge had been directed to the fact that the shotgun was not admissible on either of the two grounds mentioned or if the evidence tending to establish Howard's guilt were less overwhelming or if the rebuttal evidence offered by Howard were more impressive, a different result might be in order.

T. G. KAVANAGH, J., concurred with LEVIN, J.

J. W. FITZGERALD, J., did not sit in this case.

was arrested at his home two months after the commission of an armed robbery. The gun was found in his bedroom. He was identified as the robber. The gun "was not unique or distinguishable from other .22 caliber revolvers that could probably have been found in many homes". Nor was there testimony that it was "similar" to the gun used by the felon.