PEOPLE v STOCKFORD

1. JUDGES—DISQUALIFICATION OF JUDGES—TRIAL BY COURT—ROBBERY
   —ARMED ROBBERY—COURTS—CONVICTIONS—WAIVER—JURY
   TRIAL.

   A judge who was aware that a defendant had previously been
   convicted of armed robbery did not commit reversible error by
   allowing the defendant to waive a jury trial and be tried by the
   court on another charge of armed robbery where the defendant
   did not move to disqualify the judge and said he was willing to
   have the judge sit on and decide his case (GCR 1963, 405).

2. EVIDENCE—RELEVANCY—JUDGES—APPEAL AND ERROR—STATUTES—
   COURT RULES.

   A trial judge must draw upon his own wisdom and experience in
   making a decision on the relevancy of evidence; it is not within
   the role of the appellate court to second-guess such judgment
   and they should intervene only when clear abuse is shown, and
   Michigan statutes and court rules reflect this (MCLA 769.26;
   GCR 1963, 529.1).

3. CRIMINAL LAW—EVIDENCE—GUNS—CIRCUMSTANTIAL EVIDENCE.

   A gun which might have been used to commit a crime, found
   some time after the commission of the crime, is admissible in
   evidence where there is testimony or other evidence tending to
   identify the gun as the very gun used to commit the crime or,
   even though the gun is not so identified, it is a part of a chain
   of circumstantial evidence which in the aggregate is sufficient
   to support a verdict or finding of guilty.

4. ROBBERY—ARMED ROBBERY—CRIMINAL LAW—EVIDENCE—ADMISSI-
   BILITY OF EVIDENCE—GUNS.

   Testimony in an armed robbery case that a gun was painted
   black with scratches and little rings and ridges on it was

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury § 79.
[2] 5 Am Jur 2d, Appeal and Error § 772.
[3–5] 29 Am Jur 2d, Evidence § 266.
   30 Am Jur 2d, Evidence § 1125.
   67 Am Jur 2d, Robbery § 58.

testimony tending to identify a gun as the very gun used to commit the crime, and therefore the gun which was found approximately one month after the commission of the crime near a ditch on a road where defendant had driven by in his car seconds before being overtaken by the police and arrested was properly admitted into evidence.

5. EVIDENCE—CRIMINAL LAW—ROBBERY—ARMED ROBBERY—HARMLESS ERROR—GUNS—OBJECTIONS—COURTS—TRIER OF FACT.

Admission of a gun into evidence in an armed robbery case, if error, was not reversible error where the fact that the robbery was an armed robbery was clear from the testimony of eyewitnesses, defense counsel objected only after all the evidence had been laid before the court and the prosecutor finally moved admission of the gun, and the trial court and not a jury was acting as the trier of facts.

Appeal from Bay, Leon R. Dardas, J. Submitted Division 3 January 5, 1975, at Lansing. (Docket No. 19229.) Decided March 11, 1975.

Robert E. Stockford was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene C. Penzien,* Prosecuting Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: T. M. BURNS, P. J., and D. E. HOLBROOK and M. J. KELLY, JJ.

D. E. HOLBROOK, J. Defendant was charged with the armed robbery of the City Dairy Store in Bay City on February 24, 1973, contrary to MCLA 750.529; MSA 28.797.

The case was set for jury trial to be held on June 28, 1973, at which time, with the jury present, counsel for the defendant stated: "I just

learned that the defendant doesn't want a jury trial". The defendant in open court, after being properly informed of his constitutional right to a trial by jury, signed a valid waiver of trial by jury which was accepted by the court. Thereupon the jury was excused. Before the trial commenced the following colloquy occurred:

*"The Court:* All right, I believe there is one other matter which you indicated to the court that Mr. Stockford wished to advise the court on the record.

*"Mr. Legatz (defense attorney):* He has waived any objection he may have to trial, by Your Honor.

*"The Court:* You are willing to proceed to trial before this court, is that right, Mr. Stockford?

*"The Defendant:* Yes.

*"Mr. Penzien (prosecuting attorney):* Could we have the record indicate that the nature of the conference in Chambers was relative to the fact that the court does have knowledge of Mr. Stockford's conviction in Saginaw, and he understands and still wishes to have you try the case?

*"The Court:* That is correct, I do have knowledge, because of moving the date up to this date. That was brought to my attention. That has no effect on this matter, but you know I am aware of it. You are willing to proceed before me despite that?

*"The Defendant:* Yes, sir."

The trial then took place and was completed the same day.

Two employees of the City Dairy Store were alone in the store on the night of February 24, 1973, when defendant entered and robbed the store. The first employee to talk to the defendant, Marie Lynch, testified in part as follows:

"I said, 'What do you want, some cigarettes?', he pointed the gun at me and I backed away and Colleen came over because she saw I was frightened, and she

saw the gun, and he kept mumbling at us and finally told us to open up the till and get in the back room."

Marie followed defendant's order and opened the cash register and went into the back room.

The other employee, Colleen Gentle, after identifying the defendant in court as the person committing the robbery, testified in part:

"*A.* A man came in the door, I didn't pay any attention at first, and Marie waited on him and he had his hand over his mouth and we couldn't understand what he wanted, so she noticed the gun, she backed up and I came over, I said 'Can I help you, sir' and he said 'Get in the back room', and he said it again, so we went in the back room. He said 'Open up the cash register', and 'I want to get the money in the back room', we opened up the cash register and we waited in the back room and that's all.

"*Q. (Mr. Penzien):* You opened the cash register for him?

"*A.* No, Marie did.

"*Q.* And you went to the back room?

"*A.* Yes.

"*Q.* Did he give you any instructions as to whether or not you should look at him?

"*A.* He said, 'Don't look. Don't look', that's what he said.

"*Q.* Did you look?

"*A.* Yes. He said something to me and I turned around and he said 'Don't look', 'don't look'.

"*Q.* Did you see him taking something out of the till?

"*A.* Yes.

"*Q.* What?

"*A.* Money."

While defendant was still behind the counter Mr. and Mrs. David Polzin approached the entrance to the store (the same entrance defendant

had used). Defendant met them at the door, and both Mr. and Mrs. Polzin got a good look at the defendant.

Marie and Colleen knew the Polzins and immediately told them they had been robbed by the man who had just left. Mr. Polzin noticed defendant's car, with the motor running, parked in the street parallel to the curb as he came up to the store, where he parked his car diagonally to the curb as designated. Mr. Polzin told the girls to call the police. Mr. and Mrs. Polzin proceeded to follow defendant in their car. They were able to catch up with defendant after a few minutes and got close enough to obtain the license number, KGB 030. Mr. and Mrs. Polzin followed defendant for a couple of minutes, then stopped at the police station and reported the license number of defendant's vehicle and the car description.

Officer Robert Cassada, of the Bay City Police Department, at that time (8:29 p.m.) was in a marked police vehicle when he received the alert concerning the robbery and description of the vehicle, its license number and description of the defendant. He took up a position at McGraw and Broadway at the Bay City limits. He observed the subject vehicle, pulled in behind it and followed it for some time. After other officers arrived to assist him, he pulled the vehicle over to the curb just south of Veteran's Park on River Road. Some distance before that location is situated the K. of C. Hall, which defendant had passed. At that point, the officer testified, the defendant's vehicle was not in complete observation. About a month after the robbery, the subject gun was found near the ditch, close to the K. of C. Hall on River Road. It was turned into the police. As was noted in Colleen Gentle's testimony, she described the gun .

and said it looked like one defendant used in the robbery.

When searched by the police at the time of his arrest, defendant had on his person bills and change described by Miss Gentle as taken by defendant from the store, together with other money elsewhere on his person. Miss Lynch and Miss Gentle both positively identified the defendant as the robber, as did Mr. and Mrs. Polzin identify defendant as the person who came out of the store as they went in that night.

The trial judge found defendant guilty as charged, and sentenced him to prison for a term of 15 to 25 years. Defendant appeals as of right and raises two issues.

I

Did the trial court commit reversible error by allowing defendant to waive jury trial and to be tried by the court when the court was aware that defendant had recently been convicted of another armed robbery charge at Saginaw, Michigan?

Defendant asserts that the trial judge should have stepped aside and had another judge hear his case because he had knowledge of this prior conviction of defendant at Saginaw. This assertion of defendant is untenable in view of the recent ruling of our Supreme Court in *People v Dudley,* 393 Mich 762; 223 NW2d 297 (1974). Therein defendant was convicted of unarmed robbery in the Recorder's Court for the City of Detroit before the Honorable Robert J. Colombo, sitting without a jury. The same trial judge had five days previously accepted a guilty plea from defendant on another charge and defendant was sentenced by the same judge. On appeal the Court of Appeals reversed

and ordered a new trial. The People appealed and the Supreme Court affirmed the conviction, ruling *inter alia* that one of the reasons was that the defendant had failed to move to disqualify the judge pursuant to GCR 1963, 405, although the alleged basis of the disqualification was known by the defendant before the trial.

Likewise, the defendant herein did not only fail to move for disqualification of the trial judge, but said he was willing to have the trial judge sit on and decide his case. On the basis of *Dudley,* we rule that there is no error present.

## II

Did the trial court commit reversible error by admitting the pistol found about a month after the robbery, close to the ditch on River Road where defendant had traversed shortly after the robbery and while being followed by Officer Cassada in a marked police vehicle?

Defendant asserts that the introduction of the gun in question was erroneous, that there was no evidence which connected either the defendant or the gun to the crime.

In the recent case of *People v Howard,* 391 Mich 597; 218 NW2d 20 (1974), a somewhat similar case to the instant action, the facts therein were: Defendant appealed the jury verdict finding him guilty of armed robbery. The incident occurred on December 3, 1970 at the O'Mack Bar in Detroit. Two men committed the crime. One was armed with a pistol, the other with a sawed-off shotgun. On December 18th, an automobile was stopped because it was being driven without lights after dark and was on the wrong side of the street. Defendant was a passenger in the rear seat. The

driver had a sawed-off shotgun standing between his legs, the butt of the gun resting on the floor. Defendant was arrested for the armed robbery of O'Mack Bar. The sawed-off shotgun was admitted into evidence. Defendant claimed error in such admission. Justice MARY COLEMAN in the opinion stated on pp 602–605; NW2d 22–23:

"Defendant has made two attacks concerning admission of the shotgun. He claims the evidence was irrelevant because it was not found in defendant's possession nor was it specifically identified as the robbery weapon. Even assuming that the gun was admissible, defendant claims its prejudicial effect was so great that it was an abuse of discretion to admit it.

"How are we to evaluate the relevancy of the proffered evidence? Defendant has cited this passage by Justice COOLEY in *Stewart v People,* 23 Mich 63; 9 Am Rep 78 (1871) concerning the use of impeachment evidence:

" 'The proper test for the admissibility of evidence ought to be, we think, whether it has a tendency to affect belief in the mind of a reasonably cautious person, who should receive it and weigh it with judicial fairness.' (p 75.) Justice COOLEY further said the judge 'ought to be allowed a reasonable discretion in such cases' which 'ought not to be set aside except in a clear case of abuse'. (p 76.)

"This preeminent jurist understood the difficulty of trying to devise a mechanical test for determining relevancy. The trial judge must draw upon his own wisdom and experience in making a decision. It is not within the role of the appellate courts to second-guess such judgment. They should intervene only when clear abuse is shown.

"Our statutes and court rules reflect this conclusion. MCLA 769.26; MSA 28.1096 says in part:

" 'No * * * verdict shall be * * * reversed or a new trial granted by any court of this state in any criminal case on the ground of * * * improper admission or rejection of evidence * * * unless in the opinion of the

court, after examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.' Also see GCR 1963, 529.1.

"In the instant matter, the trial judge heard the testimony, saw the witnesses, listened to arguments and read the briefs. He decided that the shotgun should be admitted. He told the jury, in effect, to 'receive it and weigh it with judicial fairness'. Compare *People v Kelly*, 386 Mich 330; 192 NW2d 494 (1971).

"Defendant argues that the shotgun was not relevant and, if relevant, that the probative value of the otherwise admissible evidence was outweighed by its prejudicial effect. It also has been argued that its probative value in this instance amounts to little or none at all in light of the several positive identifications and other strong testimony which almost certainly would have led to defendant's conviction without admission of the gun into evidence.

"The fact that defendant had access to a sawed-off shotgun which at a minimum was similar to the one used in the commission of the crime is adequate at least to establish relevancy.

"The argument that proof of access to the shotgun tagged defendant as a 'bad boy' and therefore was prejudicial to a fair trial is also of flimsy fabric. Although it is conceded that the probative value was not conclusive, there was real probative value in the evidence that the defendant was identified as the robber with a shotgun and he did have access to a sawed-off shotgun which was similar to and could have been the one used by defendant at the time of the robbery. As the judge properly instructed immediately upon admission of the gun, the jury was to give the evidence whatever weight it deemed appropriate.

"It further is noted that no objection was made during the showing of the gun to the various witnesses and the questioning regarding identification of the gun. Only after the completion of the testimony and a motion to admit into evidence was there a motion to suppress. By this time, whatever prejudice may have flowed from the gun was a *fait accompli.*"

Justice LEVIN, in his concurring opinion, stated in part on p 610; NW2d 26:

"Guns found some time after the commission of a crime which might have been used to commit it are admissible where:

"1. There is testimony or other evidence tending to identify the gun as the very gun used to commit the crime. The testimony of the eyewitnesses in this case was not of that quality.[5]

"2. Although the gun is not so identified, it is part of a chain of circumstantial evidence which in the aggregate is sufficient to support a verdict or finding of guilty.

* * *

"[fn][5] There are a large number of guns in circulation and many look alike. A person at the blunt end of a gun is not likely to be able to say whether a gun offered in evidence is the gun that was actually used. There are, however, exceptions as indicated by the prosecutor's question of the barmaid asking whether there was anything unusual about the gun which enabled her to identify it * * *

"In the following cases the weapon used in the commission of the crime was unusual: *People v Jones,* 22 Ill 2d 592; 177 NE2d 112 (1961) (crome-plated, long-barreled revolver); *People v Pinelli,* 24 App Div 2d 1023; 265 NYS2d 918 (1965) (gun described as large steel gray, like a Luger)."

In the instant case Miss Gentle had the gun in her hands when she was questioned concerning its identification:

*"Q. (by Mr. Penzien):* Did you get a fairly good look at the gun?

*"A.* Yes.

*"Q.* Did you believe it to be a gun?

*"A.* Yes.

*"Q.* Colleen, I will show you a pistol here, which had

a clip removed, would you examine that, please, and tell us whether it has any appearance of that weapon that the defendant had?

"*A.* Well, it was painted black and had scratches on it.

"*Q.* It was painted black and it did have scratches on it?

"*A.* Yes, it did have scratches on it and it did have little rings, ridges, little ridges like right there (indicating).

"*Mr. Penzien:* Your Honor, the witness is pointing to the back end of the top part of the gun.  .

"*The Court:* Yes.

"*Q.* Did it have the general shape of this exhibit too?

"*A.* Yes.

\*  \*  \*

"*Q. (by Mr. Legatz):* You say that this gun here, People's Exhibit #3 is similar to the gun that you saw, is that right?

"*A.* Yes, it looks like it.

"*Q.* It looks like the gun that he had?

"*A.* Yes.

"*Q.* But you, of course, have no absolute way of determining that this is the same gun, you cannot swear to it under oath that it is the same gun?

"*A.* It looks like the same gun.

"*Q.* On your own, you say this is the same gun that he used?

"*A.* Well, really no, it looks like the gun.

"*Q.* You don't know whether it is the same gun?

"*A.* Okay.

"*Q.* It looks like the same gun?

"*A.* Yes."

The description of the gun was not the usual description of guns manufactured by the hundreds and thousands, but was that it was a gun painted black with scratches on it, and that it had little rings or ridges on it like the gun that Miss Gentle described when she had the gun in her hands. It is

true that it was not shown by the People that defendant had access to or possession of the gun found near the ditch on River Road, where defendant had driven by in his car just seconds before being overtaken by the police and arrested. The gun used in the robbery was not found to be of the usual type—it was different as Miss Gentle described it. Fortunately, the gun was not shot during the robbery, so it was impossible to identify it by comparison of bullets used in the gun by a ballistics expert. But it did have identifying marks on it and it was *painted black.* The gun was not offered or received into evidence until the end of the plaintiff's case, at which time the defendant objected. The Court in the *Howard* case stated: "whatever prejudice may have flowed from the gun was a *fait accompli"* (p 605, NW2d 23). The same ruling is appropriate in the instant case.

We believe under the facts and circumstances in this case, the gun was properly admitted. However, even if the admission of the gun was error, it was not reversible error because in the *Howard* case all the Justices agreed that any error present was not prejudicial. The error in this case, if any, was also harmless error. GCR 1963, 529.1; MCLA 769.26; MSA 28.1096.

First, the facts establish a virtually air-tight case. The defendant was positively identified by four persons and the two eyewitnesses both stated that he carried a pistol. Defendant was apprehended within minutes in a car which matched the exact description of that used by the robber to escape. There was no necessity to introduce the gun at all—the fact that the robbery was an armed robbery is clear from the testimony of the eyewitnesses. Second, there was no objection made throughout the trial to identification of the gun.

After all the evidence had been laid before the court, the prosecutor finally moved its admission and defense counsel objected. By this point, the objection was irrelevant. If defendant had wished to prevent such claimed prejudice, he should have objected earlier to exclude the claimed prejudicial testimony. Finally, the trial court was acting as the trier of facts and not a jury. This fact cuts toward further expanding the discretion of the trial court in either admitting or excluding evidence.

Affirmed.